UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

LAWRENCE FULTZ                                               CIVIL ACTION

VERSUS                                                       NO. 16-001

JEFFERSON PARISH                                             SECTION "B"(1)

<u>ORDER AND REASONS</u>

I.   NATURE OF MOTION AND RELIEF SOUGHT

Before the Court is Defendant's, the Parish of Jefferson ("the Parish"), "Motion for Summary Judgment" (Rec. Doc. 9), Plaintiff's, Lawrence Fultz, opposition thereto (Rec. Doc. 19), and Defendant's corresponding reply (Rec. Doc. 28). Defendant seeks entry of summary judgment and dismissal with prejudice of Plaintiff's claims against the Parish for liability and damages on the grounds that there is no genuine dispute as to any material fact, and the Parish is entitled to judgment as a matter of law and fact. As stated more fully herein, **IT IS ORDERED** that Defendant's Motion be **DENIED in part and GRANTED in part.**

II.  FACTS AND PROCEDURAL HISTORY

The undisputed facts are as follows. Jefferson Parish is a political entity which owns and operates Johnny Jacobs Memorial Playground ("the Playground") located in Marrero, Louisiana. (Rec. Doc. 9-1 at 1). Football games, track meets, and basketball games are held at the Playground. (Rec. Doc. 9-1 at 1). In 1978, the original master plan for the Playground was prepared by Hamilton,

1

Meyer and Associates, Inc., Meyers Engineers. (Rec. Doc. 9-1 at 1). In 1988, Barnard & Thomas, Engineering Inc. prepared the Master Plan for the baseball field, concession stand, and nearby men's and women's restrooms. (Rec. Doc. 9-1 at 2). In 2002, the Johnny Jacobs Memorial Pool was built. (Rec. Doc. 9-1 at 2). On February 24, 2016, the Grand Opening for the toddler lot ("tot-lot") was held, and there is no accessible route to the tot-lot at present (Rec. Doc. 9-1 at 2).

Plaintiff in this action is a qualified individual with a disability under the ADA. (Rec. Doc. 9-1 at 1). Plaintiff alleges that he visited the Playground with his grandchildren several times prior to January 1, 2016. (Rec. Doc. 18-7 at 1). During these visits, Plaintiff avers that he encountered such barriers as accessible designated parking spaces with faded striping, a narrow restroom stall that was difficult to use, lack of accessible routes, and a restroom with a mirror too high off the floor and pipes without insulation. (Rec. Doc. 18-7 at 1-2). Plaintiff alleges that he lives nearby the Playground and desires to return to the facility in the future. (Rec. Doc. 18-4 at 1).

On January 1, 2016, Plaintiff filed the instant suit in Civil District Court for the Parish of Orleans, State of Louisiana. (Rec. Doc. 1). In the complaint, Plaintiff alleged that Jefferson Parish ("Defendant") violated Title II of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 *et seq.*, and section 504 of the

Rehabilitation Act ("Rehabilitation Act"), 29 U.S.C. § 794 *et seq.* (Rec. Doc. 1). Plaintiff alleged that Defendant has failed to make the programs, services, and accommodations at the Playground accessible, as is required by U.S.C. § 12132. (Rec. Doc. 1). Plaintiff seeks damages, injunctive and declaratory relief, and attorney's fees and costs. (Rec. Doc. 1).

**III. CONTENTIONS OF MOVANT**

Defendant argues that Plaintiff's claim is false and without merit, as disabled patrons have meaningful access to all Playground programs. (Rec. Doc. 9-2 at 1). Thus, Defendant denies all claims of liability and damages. Defendant argues that Plaintiff lacks standing because he failed to establish any injury in fact. (Rec. Doc. 9-2 at 2). Specifically, Defendant asserts that the mere possibility that Plaintiff will visit the Playground again is insufficient to establish standing. (Rec. Doc. 9-2 at 3). Additionally, Defendant argues that Plaintiff has not shown that he actually attempted to attend an event at the Playground. (Rec. Doc. 9-2 at 3). However, if this Court finds that Plaintiff has standing, Defendant asserts that the Playground's existing facilities are subject to the Title II standard of program accessibility, and the Playground is in compliance with the ADA when viewed in its entirety. (Rec. Doc. 9-2 at 5-6). First, Defendant avers that the lack of designated seating at the football and track field does not deny disabled patrons program access to

3

the football games. (Rec. Doc. 9-2 at 6). In its reply to Plaintiff's opposition, Defendant asserts that program access to events may be achieved without providing access to bleachers. (Rec. Doc. 28 at 6). Additionally, Defendant notes that there is ample accessible seating area and staff available to assist disabled patrons. (Rec. Doc. 28 at 7). Second, Defendant asserts that Plaintiff's claim that there is no accessible route to the baseball field is false. (Rec. Doc. 9-2 at 6-7). Defendant likewise alleges the falsity of Plaintiff's claim that there is an insufficient number of accessible designated spaces. (Rec. Doc. 9-2 at 7). In its reply to Plaintiff's opposition, Defendant asserts that the Playground is in compliance with the applicable ADA standards. (Rec. Doc. 28 at 8-9). Specifically, the Playground has a total of 293 parking spaces, which includes nine (9) accessible designated parking spaces. (Rec. Doc. 28 at 8). Defendant asserts that compliance standards only require seven (7) accessible parking spaces under these facts. (Rec. Doc. 28 at 8). Fourth, Defendant contends that Plaintiff's claim that there is a trash can obstructing the accessible route to the Coach Melvin Burns Memorial Field is false. (Rec. Doc. 9-2 at 7). Next, Defendant asserts that Plaintiff's claim that the men's restroom stall is impermissibly narrow and does not have handrails along the back wall fails to specify which restroom is being referenced. (Rec. Doc. 9-2 at 7). In its reply, Defendant notes that its expert attests that the

4

restroom in the gymnasium provides unobstructed use and is located closest to the toddler play area and baseball field. (Rec. Doc. 28 at 8). However, Defendant agrees to make modifications to the fixtures in the men's restroom to address Plaintiff's claims that the bottom edge of the mirror is excessively high off the finished floor and the pipes under the lavatory are not insulated to prevent burns and abrasions. (Rec. Doc. 9-2 at 8). Defendant also agrees to make the necessary modifications to address Plaintiff's claims that there are accessible designated parking spaces which are not marked with vertical signage. (Rec. Doc. 9-2 at 8). In its reply to Plaintiff's opposition, Defendant emphasizes that parking stripes at accessible designated parking spaces have been repainted and vertical signage has been installed. (Rec. Doc. 28 at 8-9). Additionally, Defendant agrees to make reasonable modifications to address Plaintiff's claims that the sale and service counters at the Playground are excessively high off the finished floor. (Rec. Doc. 9-2 at 7). In its reply, Defendant notes that a call button has been installed with designated signage. (Rec. Doc. 28 at 8). Defendant asserts that it provided this information to Plaintiff on June 24, 2016, and that Plaintiff has had ample opportunity to view the updates. (Rec. Doc. 28 at 8). Finally, Defendant asserts that Plaintiff's claim that there are access aisles which do not lead to a curb cut onto a sidewalk is inaccurate and vague. (Rec. Doc. 9-2 at 8). In its reply to

5

Plaintiff's opposition, Defendant notes its expert's observation that "the playground site has accessible curb cuts along the accessible means of egress throughout the site." (Rec. Doc. 28 at 9). Further, Defendant attests that its expert observed that "both the Tennis Courts and Pool Facility are accessible from the sidewalk along the playground['s] private road." (Rec. Doc. 28 at 9).

Defendant next asserts that Plaintiff cannot prevail on a claim of discrimination under Title II of the ADA because Plaintiff cannot show that he was denied access to the Playground's football games or other sporting events. (Rec. Doc. 9-2 at 9). Defendant argues that Plaintiff's bare assertion that he "fears" visiting the Playground in the future does not equate to the denial of access to programs as is required to establish a prima facie case of discrimination. (Rec. Doc. 9-2 at 9-10). Finally, Defendant avers that Plaintiff is not entitled to recover attorney fees in this matter. (Rec. Doc. 9-2 at 10). Defendant notes that where a defendant voluntarily remedies violations set forth in a lawsuit initiated by a plaintiff, the plaintiff is not a prevailing party for purposes of attorney's fees and costs. (Rec. Doc. 9-2 at 10). Defendant argues that Plaintiff is also not entitled to recover damages because he cannot show intentional discrimination on the part of Defendant. (Rec. Doc. 9-2 at 11).

**IV. CONTENTIONS OF OPPONENT**

Plaintiff argues that he has made a prima facie showing that Defendant is in violation of the "alteration" standard, the "maintenance of accessible features" standard, and the "program access" standard. (Rec. Doc. 19 at 2). Thus, summary judgment should be entered for Plaintiff and against Defendant. Plaintiff asserts that under the "program access" standard set forth by the government, an entity is required to "affirmatively take action" to ensure access. (Rec. Doc. 19 at 2-3). Plaintiff first argues that summary judgment for Defendant is inappropriate as to the accessible seating issue because Defendant has failed to provide evidence to suggest that it provides unobstructed views of the football field for disabled patrons despite its non-compliance with the ADA. (Rec. Doc. 19 at 4). Additionally, Plaintiff argues that Defendant's proposed solution that disabled patrons locate themselves "in the accessible route" is impermissible under *Greer v. Richardson Indep. Sch. Dist.*, 472 F. App'x 287, 293 (5th Cir. 2012). (Rec. Doc. 19 at 4-5). Second, Plaintiff argues that summary judgment for Defendant is not appropriate as to the accessible route from the basketball facility to the baseball field. (Rec. Doc. 19 at 7). In support, Plaintiff points to the report of engineering expert, Nicholas Heybeck, which identifies numerous issues with the route, including the excessive slope of the curb ramp, the landing, and the sidewalk. (Rec. Doc. 19 at 7). Next, Plaintiff contends that summary judgment for Defendant is

7

inappropriate as to the faded parking, insufficient parking, or the provision of employee-assistants. (Rec. Doc. 19 at 7). Regarding the faded parking, Plaintiff argues that the fact that the Defendant has repainted the stripes does not moot Plaintiff's claim. (Rec. Doc. 18-4 at 35). Namely, Plaintiff states that Defendant has a continuing obligation to maintain the stripes and notes that Defendant "lacks credibility" in this respect. (Rec. Doc. 18-4 at 35). Regarding the claim of insufficient accessible parking, Plaintiff maintains that Defendant has not mooted this claim by its bare assertion that "The Playground exceeds the number of accessible parking spaces required by the ADA." (Rec. Doc. 18-4 at 36). Regarding the provision of employee-assistants to aid disabled patrons, Plaintiff argues that the mere presence of untrained employees does not undo the harmful effects of the physical barriers. (Rec. Doc. 18-4 at 37). Next, Plaintiff asserts that summary judgment for Defendant is inappropriate as to the restrooms. (Rec. Doc. 19 at 6). Plaintiff argues that Defendant's provision of additional accessible toilet rooms during large events does not moot Plaintiff's need for accessible toilet rooms during small events or non-events. (Rec. Doc. 19 at 6). Plaintiff also contends that summary judgment for Defendant is not appropriate for the routes from the access aisles. (Rec. Doc. 19 at 6). Namely, Plaintiff points to Mr. Heybeck's report indicating that there is no route connecting the two accessible designated

parking spaces to the adjacent sidewalk and tennis court facility. (Rec. Doc. 19 at 6). Finally, Plaintiff argues that summary judgment for Defendant is inappropriate as to the basketball concession stand. (Rec. Doc. 19 at 5). Plaintiff has issue with Defendant's claims in its supplemental discovery response that it has installed a "call button for assistance" at the concession stand with accompanying signage. (Rec. Doc. 19 at 5). Plaintiff asserts that it has not yet had an opportunity to inspect the call button to decide whether it constitutes a sufficient alternative accommodation under the ADA. (Rec. Doc. 19 at 5).

Plaintiff next argues that he has made a sufficient showing of intentional discrimination to state a claim for damages. (Rec. Doc. 19 at 8). Plaintiff notes that failure to make the reasonable modifications necessary to adjust for the unique needs of disabled patrons can constitute intentional discrimination. (Rec. Doc. 19 at 8). Plaintiff contends that unlike a "single near miss," Defendant has allowed seventy-six (76) mobility-related ADA barriers to exist at the Playground. (Rec. Doc. 19 at 9). Thus, Plaintiff argues that a material question of fact exists as to this issue and summary judgment for Defendant is not appropriate on Plaintiff's claim for money damages. (Rec. Doc. 19 at 9).

**V.   SUMMARY JUDGMENT STANDARD**

Summary judgment is proper if the pleadings, depositions, interrogatory answers, and admissions, together with any

9

affidavits, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56; *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986). A genuine issue exists if the evidence would allow a reasonable jury to return a verdict for the nonmovant. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Although the Court must consider the evidence with all reasonable inferences in the light most favorable to the nonmoving party, the nonmovant must produce specific facts to demonstrate that a genuine issue exists for trial. *Webb v. Cardiothoracic Surgery Assocs. of N. Texas*, 139 F.3d 532, 536 (5th Cir. 1998).

The moving party bears the initial responsibility of informing the district court of the basis for its motion. *Celotex*, 477 U.S. at 323. The movant must point to "portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits' which it believes demonstrate the absence of a genuine issue of material fact." *Id.* (citing Fed. R. Civ. P. 56). If and when the movant carries this burden, the nonmovant must then go beyond the pleadings and use affidavits, depositions, interrogatory responses, admissions, or other evidence to establish a genuine issue. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).

"[W]here the non-movant bears the burden of proof at trial, the movant may merely point to an absence of evidence, thus

shifting to the non-movant the burden of demonstrating by competent summary judgment proof that there is an issue of material fact warranting trial. . . . Only when 'there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party' is a full trial on the merits warranted." *Lindsey v. Sears Roebuck and Co.*, 16 F.3d 616, 618 (5th Cir. 1994) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986)). Accordingly, conclusory rebuttals of the pleadings are insufficient to avoid summary judgment. *Travelers Ins. Co. v. Liljeberg Enter., Inc.*, 7 F.3d 1203, 1207 (5th Cir. 1993).

## VI. DISCUSSION

### A. Standing

A plaintiff seeking injunctive relief under a federal disability law has standing where he (1) alleges past injury under the federal statute, (2) shows that it is reasonable to infer from his complaint that the discriminatory treatment will continue, and (3) shows that it is reasonable to infer that he "intend[s] to return to the [public accommodation]." *Kreisler v. Second Ave. Diner Corp.*, 731 F.3d 184, 187-88 (2d Cir. 2013). The Supreme Court has held that it is not necessary for an individual to provide a specific date of expected future injury to establish standing. *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 183 (2000). Plaintiff has stated that he lives in close proximity to the Playground and desires to return to the

facility in the future. (Rec. Doc. 18-4 at 1). Thus, this Court finds that Plaintiff has established standing.

**B. ADA**

Enacted on January 26, 1992, the ADA provides that "no qualified individual with a disability, by reason of such disability, [shall] be excluded from participation in, or be denied the benefits of services, programs or activities of a public entity, or be subjected to discrimination by any public entity." 42 U.S.C. § 12132. The Act defines discrimination as including "a failure to remove architectural barriers…in existing facilities…where such removal is readily achievable." 42 U.S.C. § 12182(b)(2)(A)(iv). The Americans with Disabilities Act Accessibility Guidelines for Buildings and Facilities (ADAAG)[1] sets forth the minimum technical requirements for ADA compliance for new constructions, as well as alterations to existing facilities. 28 C.F.R. § 36.402(a)(1). The term "existing facilities" includes structures built prior to the ADA's enactment that have not been modified. *Greer v. Richardson Indep. Sch. Dist.*, 752 F. Supp. 2d 746, 752 (N.D. Tex. 2010). However, when an existing facility undergoes alterations after the 1992 effective date, more stringent architectural standards apply. *Tatum v. Doctor's*

---

[1] Section 504 of the Rehabilitation Act contains similar standards known as the Uniform Federal Accessibility Standards. These guidelines are applicable to structures built with federal funds. Public entities subject to Tile II may comply with either.

*Assocs.*, 2016 WL 852458. In such cases, the alterations "shall be made so as to ensure that, to the maximum extent feasible, the altered portions of the facility are readily accessible and usable by individuals with disabilities…" 28 C.F.R. § 36.402(a)(1). An alteration is defined as "a change to the place of public accommodation or a commercial facility that affects or could affect the usability of the building or facility or any part thereof." 28 C.F.R. § 36.402(b). Normal maintenance and painting do not qualify as alterations unless the usability of the facility or any part thereof is affected. *Id*. Public entities "are not required to modify each [existing] facility to provide for access by individuals with disabilities." *Greer*, 752 F. Supp. 2d at 752. Rather, they must "operate all programs, services, and activities in a manner such that, when viewed *in its entirety*, each service or program is readily accessible to and usable by individuals with disabilities…" *Id*. (emphasis added). The Supreme Court has held that a public entity operating an older facility may comply with Title II "by adopting a variety of less costly measures, including relocating services to alternative, accessible sites and assigning aides to assist persons with disabilities in accessing services." *Tennessee v. Lane*, 541 U.S. 509, 531–32 (2004).

Defendant argues that the Playground's existing facilities are subject to the program accessibility standard because the only updates made since original construction include repainting of

faded buildings and installing of metal rods in the gymnasium roof. (Rec. Doc. 9-2 at 5). Accordingly, this Court finds that the program accessibility standard is the appropriate standard to apply given that Plaintiff's claims deal with structures built prior to the ADA's enactment in 1992.

### C. Accessible Seating

Regarding Plaintiff's claim that the lack of designated seating at the football and track field denies disabled patrons program access to the football games, this Court finds that summary judgment is inappropriate. A genuine issue of material fact exists as to whether program access to events may be achieved by seating disabled patrons in the accessible walking pathway.

### D. Accessible Route to Baseball Field

This Court likewise denies Defendant's Motion for Summary Judgment regarding Plaintiff's claim that there is no accessible route to the baseball field. Defendant's conclusory statement of the falsity of this claim does not establish that there is no genuine issue of material fact.

### E. Routes from Access Aisles

This Court also denies Defendant's Motion for Summary Judgment with respect to Plaintiff's claim that there is a trash can obstructing the accessible route to the Coach Melvin Burns Memorial Field. Defendant's assertion that this claim is false does not establish that there is no genuine issue of material fact.

Similarly, this Court denies Defendant's Motion for Summary Judgment as to Plaintiff's claim that there are access aisles which do not lead to a curb cut onto a sidewalk because a genuine issue of material fact exists.

### F. Restrooms

Regarding Plaintiff's claims concerning restroom facilities, this Court finds that summary judgment is inappropriate as to Plaintiff's claim that the men's restroom stall is impermissibly narrow and does not have handrails. Defendant's assertion that its expert found that the restroom in the gymnasium "provides unobstructed use" does not establish that the restroom is in compliance with ADA standards. Summary judgment is also not appropriate concerning Plaintiff's claim regarding the mirror and uninsulated pipes in the men's restroom. Defendant's assertion that it will make the necessary modifications is insufficient to show there is no genuine issue of material fact at present.

### G. Basketball Concession Stand

Regarding Plaintiff's claim that the sale and service counters at the Playground are excessively high off the finished floor, this Court finds that the granting of summary judgment is not appropriate. Despite Defendant's assertion that it has installed a call button and signage to aid disabled patrons, there is still a genuine issue of material fact concerning whether this has addressed accessibility issues.

### H. Parking Lot

However, this Court finds that summary judgment in Defendant's favor is appropriate as to Plaintiff's claim concerning faded parking stripes marking accessible designated spots and the lack of vertical signage. Defendant has repainted the spots in question and has installed vertical signage. (Rec. Doc. 28 at 8-9). Thus, there is no genuine issue of material fact as to this claim. Additionally, this Court grants Defendant's Motion for Summary Judgment with respect to Plaintiff's claim that there is an insufficient number of accessible designated spaces. Defendant has set forth facts to establish that there is no genuine issue of material fact that Defendant is in compliance with ADA requirements governing accessible designated parking spaces.

### VII. CONCLUSION

In light of the foregoing, **IT IS ORDERED** that Defendant's Motion for Summary Judgment be **DENIED in part and GRANTED in part**.

New Orleans, Louisiana, this 25th day of August, 2016.

SENIOR UNITED STATES DISTRICT JUDGE